IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

NATIONAL CREDIT UNION ADMINISTRATION
BOARD, as Liquidation Agent for the
N&W Poca Division Federal Credit Union,

     Plaintiff,

v.                              CIVIL ACTION NO. 1:09-0724

DEBORAH G. BAILEY, et al,

     Defendants.

MEMORANDUM OPINION AND ORDER

     Pending before the court is plaintiff's motion for summary judgment against defendants Rebecca Poe and Pamela Mullins.  (Doc. No. 86).  Defendants have failed to respond to the motion.  For reasons expressed more fully below, the motion for summary judgment is GRANTED in part and DENIED in part.

Background

     On or about October 3, 2008, the National Credit Union Administration Board ("NCUAB"), an independent agency within the executive branch of the federal government, placed N&W Poca Division Federal Credit Union ("N&W Credit Union") into involuntary liquidation due to its insolvency and appointed itself as Liquidating Agent, as required by the Federal Credit Union Act ("FCUA"), 12 U.S.C. § 1787(a)(1)(A).  See Affidavit of Jennifer Murphy at ¶¶ 2-3 (hereinafter "Murphy Aff. at ¶ ___") (attached as Exhibit A to Motion for Summary Judgment).  N&W Credit Union was a federal credit union, organized and existing

under the Federal Credit Union Act, located in Bluefield, West Virginia whose members primarily included employees and family members of the Norfolk & Southern Railroad and American Electric Power.  See id. at ¶¶ 4 and 6.  In its capacity as Liquidating Agent and pursuant to 12 U.S.C. § 1787(b)(2), NCUAB succeeded to all rights, titles, powers, and privileges of N&W Credit Union. See id. at § 5.  At all relevant times, Rebecca L. Poe was employed as the assistant manager of N&W Credit Union and her mother, Deborah G. Bailey was the manager.  See id. at ¶¶ 7-8. Pamela M. Mullins was a teller.  See id. at ¶ 9.

On June 26, 2009, NCUAB filed the instant complaint against Poe, Mullins, and others setting forth the following claims: Conversion (Count I); Breach of Fiduciary Duty (Count II); Fraud (Count III); Civil Conspiracy to Commit Fraud (Count IV); Gross Negligence (Count V); Negligent Misrepresentation (Count VI); and Negligence (Count VII).  Plaintiff seeks actual damages in the amount of at least $2,472,792.00, as well as punitive damages, attorney's fees, and interest.

Subsequent to the filing of the instant lawsuit, Poe and Mullins were convicted of bank fraud and/or aiding and abetting the same, in violation of 18 U.S.C. §§ 1344 and 2, in the United States District Court for the Southern District of West Virginia. See United States v. Poe, Criminal Action No. 1:10-00118 and United States v. Mullins, Criminal Action No. 1:10-00120.

Specifically, the charging documents[1] to which Poe and Mullins pled guilty alleged that from on or about 2003 and continuing through August 2008, Poe and Mullins, aided and abetted by each other did knowingly execute and attempt to execute a scheme and artifice to defraud N&W Credit Union, which scheme involved misrepresentation and concealment of material facts.  See United States v. Poe, Criminal Action No. 1:10-00118 (Doc. No. 5) and United States v. Mullins, Criminal Action No. 1:10-00120 (Doc. No. 5).  Poe and Mullins pled guilty to knowingly creating fictitious deposits in their own accounts and the accounts of others, including family members, by posting credits to the accounts and making it appear as if the credit union received funds to support the deposits when, in fact, no such funds had been received by N&W Credit Union.  See id.  Both women also pled guilty to falsely recording payments to their own loan accounts and the accounts of others when, in fact, no such loan payments had been received by N&W Credit Union.  See id.  The charging documents also stated that Poe and Mullins would manually issue checks on N&W Credit Union's account, held at First Century Bank, made payable to family members, creditors, and to third parties for personal expenditures.  See id.  These checks were not

---

[1] Poe pled guilty to an indictment and Mullins pled guilty to an information.  See United States v. Poe, Criminal Action No. 1:10-00118 (Doc. No. 5) and United States v. Mullins, Criminal Action No. 1:10-00120 (Doc. No. 5).  However, he content of both charging documents is substantially similar.

recorded in N&W Credit Union's general ledger.  See id.  Poe and Mullins also pled guilty to knowingly failing to post ACH transactions on their accounts and the accounts of others, knowing that there were insufficient funds in the accounts to cover the transaction amounts.  See id.  Poe was charged with concealing the outages at N&W Credit Union by falsifying information she knew would be included on the quarterly financial reports of N&W Credit Union.  See United States v. Poe, Criminal Action No. 1:10-118 (Doc. No. 5).

As part of her written plea agreement with the United States, Mullins entered into a Stipulation of Facts that reads:

> 4. Beginning in or about 2003, Ms. Mullins began making fictitious deposits into her checking account, that is, Ms. Mullins posted deposits to her checking account to increase the balance of her account and therefore, the money available to her without supporting those deposits with actual checks or cash to N&W Credit Union.  In posting the money to these accounts, Ms. Mullins falsified the books and records of N&W Credit Union by making it appear on most occasions as if a check had been received by N&W Credit Union.

> 5. After posting fictitious deposits to her account, Ms. Mullins used the funds to pay personal expenses.

> 6. Ms. Mullins additionally posted fictitious payments to loan accounts she had in her name at N&W Credit Union, thereby reducing the amount of money she owed to the N&W Credit Union on the loan accounts without making an actual payment to N&W Credit Union.

7. During the course of the scheme, Ms. Mullins additionally posted fictitious deposits to accounts, both checking and loan accounts, of other N&W Credit Union members who were primarily her family members.

8. During the course of the scheme, Ms. Mullins additionally made fictitious deposits to an account at N&W Credit Union to reduce Ms. Mullins' debt to the account holder.

9. During the course of the scheme, Ms. Mullins manually created checks written on the N&W Credit Union's account maintained at First Century Bank which were not recorded in the general ledger of N&W Credit Union.  Some of these checks were made payable to third parties to pay for credit cards or other personal expenses of Ms. Mullins and others were made payable to Ms. Mullins or family members.  In creating the manual checks Ms. Mullins acted with the assistance and knowledge of another individual known to the United States who signed the aforementioned checks on behalf of N&W Credit Union.  Ms. Mullins also signed manual checks on behalf of N&W Credit Union at the request of and for the benefit of the individual known to the United States.

10. During the course of the scheme, Ms. Mullins made purchases and paid expenses by ACH transactions with the knowledge that she did not have sufficient funds to cover the expenses in her accounts at the credit union and with the knowledge that the ACH transactions would not be posted to her account.

11. During the course of the scheme, members of Ms. Mullins' family made purchases and paid expenses through ACH transactions with Ms. Mullins' full knowledge that there were insufficient funds in those accounts to cover the transactions and that the ACH transactions were not posted to the accounts.

12. Ms. Mullins had knowledge of and assisted another individual known to the United States in

committing similar acts of fraud against N&W Credit
Union and in covering up the scheme.

United States v. Mullins, Criminal Action No. 1:10-120 (Doc. No.

12).

Furthermore, at her plea hearing on September 13, 2010,

Mullins' participation in the crime of conviction was summarized

by the Assistant United States Attorney as follows:

> Your Honor, if the United States were to proceed to
> trial in this matter, we would offer both documentary
> and testimonial evidence to show that . . . the N&W
> Poca Division Federal Credit Union was, in fact, a
> financial institution, that is, a credit union whose
> deposits were insured by the National Credit Union
> Administration through the National Credit Union Share
> Insurance Fund during all relevant times and that she
> was an employee of the N&W Poca Division Federal Credit
> Union.  She was one of three employees at that credit
> union in Bluefield during the relevant times, and
> that's from approximately 2003 through August of 2008.
> . . . The United States would offer the admissions of
> Ms. Mullins, as well as the testimony of a forensic
> auditor who examined the books and records of the . . .
> N&W credit union. . . .
>
> Specifically, Ms. Mullins would conduct transactions at
> the credit union that would inflate or artificially
> inflate the balance of her personal bank accounts.  She
> would make entries into her accounts that would make it
> appear as if the bank had received either a check or
> cash from her personally, which it would then increase
> her checking account.  Those monies would then be used
> by her to pay personal bills and expenses.  Ms. Mullins
> did that not only for herself, but also made certain
> what we call fictitious deposits into accounts of her
> spouse, as well as at least one of her sons.
>
> Additionally, Ms. Mullins would makes those
> fictitious entries into loan accounts that she

personally had and that family members had at the
credit union and, again, it would just be a manual
entry into the books and records of the credit union
which would increase the — make it look like there was
a credit to the loan account when, in fact, there had
been no check deposited to her, or cash deposited by
her, or any funds received by the credit union to
offset those deposits.

There was another method in which monies were
taken by her out of the bank, and that is that she
would, with the assistance of another individual, issue
manual checks on N&W's bank account at First Century.
And these checks would be written to sometimes third
parties who would be, for example, a credit card, or
even a utility bill that she would owe, and these
checks would be manually issued.  That means they would
not go through the regular books and records or
computer system at the credit union and would not be
logged into their books and records, so it would be
simply a check that would go out, that check would be
honored, but it would never show up or be reflected in
the credit union's system, and there was no money put
into the credit union to support the payment of those
funds going out of the accounts.

United States v. Mullins, Criminal Action No. 1:10-120 (Doc.

No. 19 at pp. 21-23).

    Mullins agreed that this description was "substantially

correct" and made no changes to the description of her

activities.  See id. at p. 25.  Mullins also admitted that she

did the acts, intended to do the acts, and was pleading guilty

because she was guilty.  See id.

    As noted above, Poe also pled guilty to bank fraud but she

did not enter into a written plea agreement with the United

States.  At her plea hearing, on October 5, 2010, the court recited the elements which the United States would have to prove if defendant were to go to trial and defendant swore under oath that she was in fact guilty of the offense of conviction.  See United States v. Poe, Criminal Action No. 1:10-118 (Doc. Nos. 19-21).

On July 25, 2011, Poe was sentenced to a term of imprisonment of 51 months to be followed by a three-year period of supervised release.  See United States v. Poe, Criminal Action No. 1:10-118 (Doc. No. 30).  She was also ordered to pay a $100 special assessment.  See id.  Finally, the court entered an order of restitution in the amount of $2,406,804 with the the first $1,406,804 payable to NCUAB, the primary victim, and the remaining $1,000,000 payable to the CUMIS Insurance Society, the secondary victim.  See id.

On September 19, 2011, Mullins was sentenced to a term of imprisonment of 30 months to be followed by a three-year period of supervised release.  See United States v. Mullins, Criminal Action No. 1:10-120 (Doc. No. 30).  She was also ordered to pay a $100 special assessment.  See id.  Finally, the court entered an order of restitution in the amount of $2,472,792 with the first $1,472,792 payable to NCUAB, the primary victim, and the remaining $1,000,000 payable to the CUMIS Insurance Society, the secondary victim.  See id.  In both criminal proceedings, the

8

court held that Poe and Mullins were jointly and severally liable for the restitution obligation.

After a stay to accommodate resolution of the criminal cases against Poe and Mullins, NCUAB moved for summary judgment against Poe and Mullins as to all claims.  In so doing, Murphy's Affidavit indicates that the total loss suffered by NCUAB was § 2,472,792.  Murphy Aff. at ¶ 36; see also Report of Lillie & Co., April 3, 2009 (attached as Exhibit D to Plaintiff's Motion for Summary Judgment).  Neither Poe nor Mullins responded to the motion for summary judgment.

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the burden of establishing that there is no genuine issue as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial.  Id. at 322.  If the moving party meets this burden, according to the United

States Supreme Court, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the moving party has met this burden, the burden shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 250-51.

With respect to a district court's duties in deciding unopposed summary judgment motions, our appeals court has counseled:

> In this case, the plaintiff failed to respond to the defendants' motion for summary judgment, despite repeated notices to do so. This failure to respond, however, does not fulfill the burdens imposed on moving parties by Rule 56. Section (c) of Rule 56 requires that the moving party establish, in addition to the absence of a dispute over any material fact, that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those

10

facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to "a judgment as a matter of law." The failure to respond to the motion does not automatically accomplish this. Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law. This duty of the court is restated in section (e) of the rule, providing, "if the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e) (emphasis in original).

Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993).

However, pursuant to Federal Rule of Evidence 201, the court has taken judicial notice of the documents filed in the criminal cases of Poe and Mullins, as well as the record of the proceedings therein. See Colonial Penn Ins. Co v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that the most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (internal quotations omitted); see also Davis v. Smith, Civil Action No. 3:09CV274-HEH, 2010 WL 3835026, *3 (E.D. Va. Sept. 28, 2010) (taking judicial notice of plaintiff's conviction for possession of explosive material by a convicted felon in deciding defendants' motion for summary judgment). Furthermore, "[a] conviction of a defendant for an offense involving the act giving rise to an order of restitution shall estop the defendant from denying the essential allegations

11

of that offense in any subsequent Federal civil proceeding or State civil proceeding, to the extent consistent with State law, brought by the victim."  18 U.S.C. § 3664(l).

## **Analysis**

A.    *Conversion (Count I)*

Under West Virginia law, conversion is defined as

> Any distinct act of dominion wrongfully exerted
> over the property of another, and in denial of
> his rights, or inconsistent therewith, may be
> treated as a conversion and it is not necessary
> that the wrongdoer apply the property to his own
> use. And when such conversion is proved the
> plaintiff is entitled to recover irrespective of
> good or bad faith, care or negligence, knowledge
> or ignorance.

Syl. Pt. 17, Rodgers v. Rodgers, 184 W. Va. 82, 399 S.E.2d 664, 668 (1990) (citation and quotation marks omitted).  The West Virginia Supreme Court of Appeals has recognized conversion as occurring whenever one party exercises dominion over the property of another, regardless of intent. See Pine & Cyprus Mfg. Co., 125 S.E. at 375.

The criminal records in this matter establish Poe and Mullins are both liable for conversion.  Here, both defendants have admitted to knowingly taking the funds of N&W Credit Union when they were not entitled to do so.  Furthermore, their intent is irrelevant.  Therefore, plaintiff is entitled to summary judgment on Count I.

B.        *Breach of Fiduciary Duty (Count II)*

        "The fiduciary duty is a duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person.  It is the highest standard of duty implied by law."  Elmore v. State Farm Mut. Auto. Ins. Co., 504 S.E.2d 893, 898 (W. Va. 1998) (internal citations and quotations omitted). However, "[a]s a general rule, a fiduciary relationship is established only when it is shown that the confidence reposed by one person was actually accepted by the other, and merely reposing confidence in another may not, of itself, create the relationship."  Id. at 899 (internal citations omitted).  In West Virginia, in order to prevail on a breach of fiduciary duty claim, a plaintiff must show: (1) the existence of a fiduciary relationship; (2) a breach; and (3) damage proximately caused by the breach.  See Wittenberg v. First Indep. Mortg. Co., Civil Action No. 3:10-CV-58, 2011 WL 1357483, *17 (N.D.W. Va. Apr. 11, 2011) (citing State ex rel. Affiliated Const. Trades Found. v. Vieweg, 205 W. Va. 687, 701-02 (1999) (Workman, J. concurring)).

        Without citation to West Virginia law, defendant contends that Poe and Mullins had a fiduciary relationship with N&W Credit Union because they were employees of the credit union. The court, however, does not agree.  A number of jurisdictions have concluded that the mere fact of an employment relationship does not create a fiduciary duty.  See, e.g., Mandel v. Howard,

No. 11-23620-Civ, 2012 WL 1069182, *5 (S.D. Fla. Mar. 29, 2012) (declining to find that individual who was Procurement Director for company owed fiduciary duty based solely upon status as employee); <u>Wilson v. Dantas</u>, No. 12 Civ. 3238(GBD), 2013 WL 92999, *4 (S.D.N.Y. Jan. 7, 2013) ("employment relationships do not create fiduciary relationships"); <u>FBK Partners, Inc. v. Thomas</u>, Civil No. 09-292-GFVT, 2010 WL 4940056, *4 (E.D. Ky. Nov. 30, 2010) ("When mere employees are involved, the existence of a fiduciary duty cannot be presumed.  Instead, a fiduciary relationship is found only if the employer/employee relationship is one that is founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking.") (internal quotations and citations omitted).

At this juncture, NCUAB has not shown that it is entitled to judgment as a matter of law on its breach of fiduciary duty claim because it has failed to show that Poe and Mullins owed a fiduciary duty to its former employer.  <u>See Pomeroy, Inc. v. Four Jaks, Inc.</u>, 11 F. App'x 275, 2001 WL 603415, *1-2 (4th Cir. June 4, 2001) (discussing considerations relevant to a determination of whether fiduciary duty exists).  For these reasons,

plaintiff's motion for summary judgment as to Count II will be
DENIED.

C.      *Fraud (Count III)*

Under West Virginia law, the essential elements in a
cause of action for fraud are: (1) that the act claimed to be
fraudulent was the act of the defendant or induced by him; (2)
that it was material and false; that plaintiff relied upon it and
was justified under the circumstances in relying upon it; and (3)
that he was damaged because he relied upon it.  Tri-State Asphalt
Products, Inc. v. McDonough Co., 391 S.E.2d 907, 912 (W. Va.
1990) (quoting Lengyel v. Lint, 280 S.E.2d 66, Syl. pt. 1 (W. Va.
1981)).

Both Poe and Mullins pled guilty to and were convicted of
bank fraud, under 18 U.S.C. § 1344.  The elements of that offense
are:  (1) the defendant knowingly executed or attempted a scheme
or artifice to defraud a financial institution, (2) he did so
with intent to defraud, and (3) the institution was a federally
insured or chartered bank.  See United States v. Brandon, 298
F.3d 307, 311 (4th Cir. 2002).

The records in the underlying criminal cases establish
that both Poe and Mullins committed fraudulent acts against N&W
Credit Union.  Indeed, the criminal charging documents to which
they pled guilty outline a number of fraudulent acts including:
(1) creating fictitious deposits; (2) falsely recording payments

15

to loan accounts; (3) manually issuing checks drawn on N&W Credit Unions account made payable to themselves and others that were not recorded on the general ledger; and (4) failing to post ACH transactions on their accounts and the accounts of others, knowing that there were insufficient funds in the accounts to cover the transaction amounts.

As to the second element to establish fraud, the record shows that these fraudulent acts of Poe and Mullins were both material and false, that plaintiff relied on them, and was justified in doing so.  Specifically, with respect to creating fictitious deposits and falsely recording payments, both defendants admitted to doing so and that, in order to do so, they falsified bank records.  N&W Credit Union, who was acknowledged to be a victim of defendants' crimes in the criminal cases, relied upon these falsified records in providing money to defendants and were justified in relying on bank records because they had no reason to believe they had been falsified.  Under West Virginia law, "one to whom a representation has been made may believe the same to be true and act thereon without making inquiry or investigation to determine that truth thereof." Allegheny & Western Energy Corp. v. Columbia Gas. Sys., Civ. A. No. 2:85-0652, 1986 WL 13360, (S.D.W. Va. June 30, 1986) (quoting Morrison v. Bank of Mount Hope, 20 S.E.2d 790, 793 (W. Va. 1942)).

16

Finally, as to damages, the restitution orders entered in the criminal cases, as well as the Murphy Affidavit and Lillie & Co. report, show that plaintiff suffered damages.  Accordingly, plaintiff's motion is GRANTED as to Count III.

D.      *Civil Conspiracy to Commit Fraud (Count IV)*

"A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means.  The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." Dunn v. Rockwell, 225 W. Va. 43, 689 S.E.2d 255, 269 (2009) (quoting Dixon v. American Indus. Leasing Co., 162 W. Va. 832, 834, 253 S.E.2d 150, 152 (1979)).

"The elements of a civil conspiracy claim are met therefore when it is proven that (1) two or more people who are named as defendants (2) agreed to commit overt tortious act(s) for a common purpose (3) committed the overt tortious act(s) (4) proximately causing Plaintiff harm." Marfolk  Coal Co., Inc. v. Smith, 274 F.R.D. 193, 197 n. 4 (S.D.W. Va. 2011).  Given that the court has already concluded that defendants are liable for fraud which damaged plaintiff, the court must determine whether the first two elements have been satisfied.  It is well settled that a civil conspiracy requires concerted action by two or more persons or entities. See Dixon v. American Indus. Leasing Co.,

162 W. Va. 832, 834, 253 S.E.2d 150, 152 (1979). Further, the proponent of a civil conspiracy claim must produce at least circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective and mutual agreement. See Wenmoth v. Duncan, Civil Action No. 3:08-CV-182, 2009 WL 2707579, *5 (N.D.W. Va. Aug. 26, 2009).

The charging documents in the criminal cases, to which Poe and Mullins pled guilty, establish that Poe and Mullins worked together to commit fraud. Indeed, Poe's indictment reads in relevant part:

> 3. From in or about 2003 and continuing through August 2008, at or near Bluefield, Mercer County, West Virginia, within the Southern District of West Virginia and elsewhere, defendant REBECCA POE aided and abetted by Pamela Mullins, named herein as an aider and abettor but not as a defendant, did knowingly execute and attempt to execute a scheme and artifice to defraud N&W Credit Union and to obtain monies owned by and under the custody and control of N&W Credit Union, by means of materially false and fraudulent pretenses, representations and promises.

> 8. It was further a part of the scheme that defendant REBECCA POE, aided and abetted by Pamela Mullins, took the monies of N&W Credit Union by manually issuing official checks drawn on N&W Credit Union's account held at First Century Bank made payable to family members, to her creditors and to third parties for personal expenditures, and concealed such activity by not recording the checks in N&W Credit Union's general ledger.

> 9. It was further a part of the scheme that defendant REBECCA POE, aided and abetted by Pamela Mullins, knowingly failed to post ACH transactions on her account and the accounts of others, including accounts of family members, knowing that there were

18

insufficient funds in the accounts to cover the
transaction amounts.

10.    It was further a part of the scheme that defendant
REBECCA POE had knowledge of and assisted Pamela
Mullins in the same fraudulent conduct to the
benefit of Pamela Mullins and family members of
Pamela Mullins.

<u>United States v. Poe</u>, Criminal Action No. 1:10-118 (Doc. No. 5).

As for Mullins, the Information to which she pled guilty
alleged:

3.    From in or about 2003 and continuing through August
2008, at or near Bluefield, Mercer County, West
Virginia, within the Southern District of West
Virginia and elsewhere, defendant PAMELA MULLINS and
an individual known to the United States Attorney,
aided and abetted by each other, did knowingly
execute and attempt to execute a scheme and artifice
to defraud N&W Credit Union, which scheme involved
misrepresentation and concealment of material facts.

5.    It was a part of the scheme that defendant PAMELA
MULLINS, aided and abetted by an individual known to
the United States, knowing[ly] created fictitious
deposits into her account and accounts of others,
including family members, by posting credits to the
accounts and making it appear as if the credit union
received funds to support the deposits when, in
fact, no such funds had been received by N&W Credit
Union.

6.    It was further a part of the scheme that defendant
Pamela Mullins, aided and abetted by an individual
known to the United States, falsely recorded
payments to her loan accounts and loan accounts of
others, including family members, when, in fact, no
such loan payments had been received by N&W Credit
Union.

7.    It was further a part of the scheme that defendant
PAMELA MULLINS, aided and abetted by an individual
known to the United States Attorney, manually issued
checks on N&W Credit Union's account held at First
Century Bank made payable to family members, to

defendant's creditors and for personal expenditures
and which checks were not recorded in N&W Credit
Union's general ledger.

8.    It was further a part of the scheme that defendant
PAMELA MULLINS, aided and abetted by an individual
known to the United States, knowingly failed to post
ACH transactions on her account and the accounts of
others, including accounts of family members,
knowing that there were insufficient funds in the
accounts to cover the transaction amounts.

United States v. Mullins, Criminal Action No. 1:10-120 (Doc. No.
5).

    The foregoing establishes the sort of concerted action on
the part of Poe and Mullins that is the hallmark of a civil
conspiracy claim.  For these reasons, plaintiff's motion for
summary judgment is GRANTED as to Count IV.

Conclusion

    For the reasons discussed more fully above, plaintiff's
motion for summary judgment on its claims against Rebecca Poe and
Pamela Mullins is GRANTED as to Counts I, III, and IV and DENIED
in all other respects.[2]  Accordingly, the court hereby ENTERS
JUDGMENT in favor of NCUAB against defendants Rebecca Poe and
Pamela Mullins in the amount of $2,472,792.  The Clerk is
directed to send copies of this Order to all counsel of record
and unrepresented parties.

─────────────────

    [2] NCUAB's Motion for Summary Judgment asks for judgment
in its favor as to all counts in the Complaint.  However, their
filings do not contain any discussion as to why they are entitled
to judgment in their favor on the counts not discussed herein.

20

**IT IS SO ORDERED** this 14th day of July, 2015.

ENTER:

David A. Faber
Senior United States District Judge